UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBIO RONNIE TOWNSEND,<br><br>        Petitioner,<br><br>  v.<br><br>AUDREY KING,<br><br>        Respondent.[1] | No.  2:13-cv-00859 GGH P<br><br><u>ORDER and</u><br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

*Introduction and Summary*

Either petitioner is akin to Randle Patrick McMurphy of *One Flew Over the Cuckoo's Nest*, or he is, in fact, a person who has real mental infirmities and whose release from the California's Mentally Disordered Offender (MDO) program would make him a danger to the public. However, this habeas ruling will not determine that question on its merits as petitioner has clearly not raised a cognizable federal issue. The petition should be dismissed in part and summarily denied with respect to one MDO commitment proceeding.

/////

---

[1] Petitioner named his former state hospital (Atascadero) as respondent; however, his present custodian is Audrey King of Coalinga State Hospital.  Audrey King is ordered substituted in place of Atascadero State Hospital pursuant to Fed. R. Civ. Pro. 25 (d)(1).

1

*Procedural Facts*

The basic procedural history is given in the most recent appellate opinion regarding petitioner's status as an MDO[2]:

> In 2008, defendant pled no contest to possession of a destructive device (a Molotov cocktail) and admitted previously being convicted of a strike offense and serving a term in prison. Consistent with his plea, defendant was sentenced to an aggregate term of two years and eight months in state prison.
>
> Defendant's custody was later transferred from the Department of Corrections and Rehabilitation to the Department of Mental Health and in June 2011, the People petitioned to extend defendant's commitment as a mentally disordered offender pursuant to Penal Code section 2970. Those proceedings were continued until June 2012 when the People filed a second petition to extend defendant's commitment for an additional year.
>
> In support of the People's second petition, they submitted the affidavit of Jeanne Garcia, M.D., medical director at Atascadero State Hospital. In Dr. Garcia's opinion, defendant "qualifies for continued treatment ... in that his severe mental disorder is not in remission and cannot be kept in remission." Attached to Dr. Garcia's affidavit is a forensic report dated March 16, 2012, prepared by Brandi Mathews, Ph.D.
>
> To prepare her report, Dr. Mathews reviewed defendant's medical records and numerous legal documents. Dr. Mathews also consulted with defendant's treating psychologist. She intended to interview defendant but "treatment staff indicated [defendant was exhibiting] recent increased levels of agitation...." Thus, Dr. Mathews did not interview defendant.
>
> As noted by Dr. Mathews, defendant was previously diagnosed with schizoaffective disorder, bipolar type. Based on her review of defendant's historical information and current "presentation" at Atascadero, Dr. Mathews agreed with that diagnosis.

---

[2] Like the federal government (see 18 U.S.C. section 4246), California has a proceeding wherein a prisoner who is about to be released on parole or otherwise, may be found so dangerous to others, if released, on account of a mental disease or defect, that instead of release, he will be committed to a state hospital for a term of one year. If remission has not occurred, or is not possible at the time of expiration of commitment, petitioner may be recommitted for another one year period. See Cal. Penal Code section 2970. The person to be committed is represented by counsel and is entitled to the protections of a jury trial to ensure that he meets the criteria of commitment. See Cal. Penal Code section 2972.

In support of her opinion, Dr. Mathews cataloged defendant's "well-documented" history of psychiatric treatment dating back to defendant's first psychotic break in 1978. She described defendant's history of "both psychotic and mood symptoms," which include, among other symptoms: auditory hallucinations, grandiosity, decreased need for sleep, and paranoia. According to defendant's medical records, the symptoms of his "severe mental disorder are not controlled by medication and/or psychosocial support."

By reviewing defendant's recent progress notes at Atascadero, Dr. Mathews learned that defendant continued to exhibit "significant mood symptoms." She noted defendant continued to demonstrate paranoia and "mood lability." Other progress notes reported defendant exhibiting "increased agitation" and irritability. Defendant was further described in the progress notes as "[using] loud speech, pacing the unit, and being intrusive with others." Based on her review of defendant's records, and the reporting of defendant's "overt symptoms," Dr. Mathews concluded that defendant's "severe mental disorder" was not in remission, and as a result of defendant's severe mental disorder, he represented a "substantial danger of physical harm to others."

To support her conclusions, Dr. Mathews outlined defendant's history of violent and aggressive behavior. Dr. Mathews also described three more recent incidents where defendant's aggression and agitation required him to be placed in restraints and/or sequestered.

Dr. Mathews also indicated that defendant "has limited insight into his severe mental disorder and the importance of medications." Defendant repeatedly refused his medications so was twice placed on an involuntary medication order, and his attendance at his treatment group meetings was "inconsistent." Defendant even told his treating psychiatrist that he would not take his medications " 'on the outside,' " because defendant believed " 'there [was] nothing wrong with [him].' "

In addition to his continued mood symptoms and violent conduct, Dr. Mathews noted defendant's extensive history with drug and alcohol abuse, as well as his lengthy criminal history (including five felony convictions). In Dr. Mathews's opinion, defendant met the criteria for extending his commitment.

On August 10, 2012, a hearing was held on the People's petition. The People submitted the matter based on the documents filed with the court. Defendant was invited to speak on his own behalf but refused. Based on the petition filed by the People, the recommendation of Dr. Garcia, and Dr. Mathews's March 16, 2012 report, the court ordered defendant's commitment extended for one year, to

November 8, 2013. Defendant appeared.

People v. Townsend, 2013 WL 2948118 (Cal. App. 2013)

Petitioner did have a violent past. In the early to mid- 1980s, he had been convicted of a firearm assault on a police officer. See People v. Townsend, 171 Cal. App. 3d 900, 215 Cal. Rptr. 120 (1985). With respect to the predicate offense which precipitated his first MDO finding, possession of Molotov cocktails, petitioner demonstrated his dangerous tendencies and mental problems. Petitioner had planted 12 Molotov cocktails on a neighbor's property to be used against the '"bad guys in the neighborhood.'" People v. Townsend, 182 Cal. App. 4th 1151, 1153, 106 Cal. Rptr. 3d 454 (2010). He carried Molotov cocktails on his person for protection because, in a paranoid state, he imagined that his neighbors were engaged in systematic burglaries of many houses in his neighborhood as well as other imaginary bad acts. Id.

*Custody/Mootness/Successive/Status*

As set forth above, petitioner was convicted in 2008, served that prison sentence into 2009, and was thereafter found to meet the MDO criteria in a trial type hearing in San Luis Obispo. Because MDO commitments are for one year only terms, a new petition was filed in Sacramento Superior Court for 2011 and 2012. In a proceeding which encompassed both petitions for commitment, petitioner was again found unfit for release from the mental hospital.

As noted by respondent, it is difficult to discern in the instant petition what "conviction" petitioner is challenging. Therefore, the undersigned will initially determine what proceeding may be reviewed on its merits. In summary, one might initially think that because the sentence for the criminal conviction had completely expired, petitioner, presently serving an MDO mental commitment term, would not be "in custody" for habeas purposes of reviewing the 2008 conviction. For the reasons expressed below, the initial thought is incorrect. However, review of the 2008 conviction is successive herein as this conviction has been reviewed in federal habeas before. This court lacks authority, therefore, to adjudicate any claimed error in that criminal trial. Further, petitioner is *not* in custody for his 2009 San Luis Obispo civil commitment. Petitioner is "in custody" for his 2011/2012 commitments as he filed the instant federal petition before his

2012 commitment expired. Nor is review of his now expired 2011, 2012 MDO terms moot. Finally, with respect to the only proceeding that is properly before the court, the 2011/2012 Sacramento proceeding, petitioner has failed to demonstrate a cognizable federal issue.

"In custody" is a jurisdictional aspect of habeas corpus, and is the first line of inquiry if there is any question about custody status. Bailey v. Hill, 599 F.3d 976, 978 (9th Cir. 2010). Unless a subsequent custody bears a significant nexus to a past conviction, one is not in custody for a past, expired conviction. The cases of Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001), and Brock v. Weston, 31 F.3d 887 (9th Cir. 1994), stand for the proposition that a mental commitment "conviction" bears a substantial nexus to a previous criminal conviction, if the criminal conviction is a necessary predicate to the civil commitment. Such is the case here—the MDO commitment is necessarily predicated on the 2008 "violent" criminal conviction. Thus, petitioner is rendered "in custody" for purposes of attacking the prior criminal conviction.

However, to the extent that petitioner does challenge his 2008 conviction, his latest petition is doubly successive, see Order of Nov. 12, 2013 in Townsend v. King, 2:12-cv-2350 GGH P, and cannot be entertained by this court unless the Ninth Circuit authorizes it to go forward. 28 U.S.C. section 2244(b)(2), (3). [3] While petitioner is deemed to be "in custody" for the 2008 conviction, see supra, this does not mean that he can relentlessly challenge that conviction every time he is recommitted under the MDO law.

Petitioner is "in custody" for the 2011-2012 MDO proceeding as he challenged this proceeding in federal court before the expiration of the 2012 MDO term. Nor is petitioner's attack on his 2011-2012 MDO decision rendered moot simply because he is presently serving an MDO term subsequent to the ones at issue here.[4] The short duration of each commitment term (one year) deprives petitioner of any realistic chance to have his issues heard in federal habeas.

---

[3] The 12-cv-2350 case was termed successive by the undersigned as dismissals based upon AEDPA limitations are dismissals on the merits for purposes of determining whether a subsequent petition is successive. McNabb v. Yates, 576 F.3d 1028, 1030 (9th Cir. 2009).

[4] According to the most recent docket address, petitioner remains housed in a state hospital. Therefore, he is either in process for another MDO hearing, or has again been found to be dangerous if released from treatment.

5

1   See Hubbard v. Knapp, 379 F.3d 773, 777-78 (9th Cir. 2004) (SVPA case).

2   Finally, petitioner cannot challenge his San Luis Obispo 2009 MDO proceeding in that the MDO proceedings in California are independent of one another, i.e., a more recent commitment does not depend upon a prior commitment order. Thus, petitioner cannot be "in custody" for the San Luis Obispo commitment. Burris v. Hunter, 290 F. Supp. 2nd 1097, 1101 (C.D. Cal. 2003).

When procedurally deficient convictions are purged, the only "conviction" at issue is the Sacramento 2012 MDO court proceeding in which the state court consolidated the 2011 and 2012 petitions.

*No Cognizable Federal Issue Can Be Identified in Petitioner's Challenge to the 2012 MDO Proceeding*

One must specify a legal and factual basis for proceeding in federal habeas corpus. Bald conclusions do not permit a habeas petition to go forward. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." Jones v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). See also Cox v. Del Papa, 542 F.3d 669, 681 (9th Cir. 2008). Petitioner must specify a factual basis which demonstrates a real possibility that petitioner is in custody in violation of federal law. See Blackledge v. Allison, 431 U.S. 63, 75 & n.7, 97 S. Ct. 1621 (1977).

The petition regarding the MDO proceedings at issue here is the type for which no relief can be granted. Ground One commences with the following: The Hospital thinks I'm dangerous; of course I'm dangerous; I'm a veteran of the United States Army…. The remainder of Claim One continues in that vein. Ground Two simply concludes that *all* the state hospital doctors lied and slandered petitioner. For example: "[o]ne doctor David Finnell slandered my name by lying and stated I was planning to go see Secretary of State Condoleeza- Rice, when I get out; I didn't say that, but why can't I?" Petition at 7. And: "Doctor Joan Odom (Odom) lied and stated that I said I was going to kill my drill-sergeant; and she said that I'd brandished a pistol at a fire fighter[5]. These two are extremely skilled liars, and they're good at it, too…." Ground Three fares no better: Everyone from the court reporter to the judge, especially the judge know they're

---

[5] Petitioner has been convicted of a firearm assault on a police officer.

both lying and they did this to me 32 times….." Ground Four: "I'm a three-strike candidate and I have been running into problems in this maximum-security psychiatric nightmare…your Honor, they're running a scam here; and they're running a scam in Sacramento County and San Luis Obispo Superior Courts."

While petitioner points to specific, asserted "lies," he presents no evidence from which it might be inferred that the treating and reviewing doctors "lied." As set forth by the California Court of Appeal:

> Defendant raised several issues in his supplemental brief regarding the process by which his commitment was extended. In addition to defendant's over-arching concern that people are telling lies about him, he contends it was error for the court to rely on Dr. Mathews's report because Dr. Mathews never met defendant.
>
> First, there is no evidence in the record that anything included in the record is untrue, including the information contained within Dr. Mathews's report. Second, as an expert, Dr. Mathews is permitted to form her opinion regarding defendant's mental state based on information "made known to h[er] at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which h [er] testimony relates...." (Evid. Code, § 801, subd. (b).) Thus, Dr. Mathews was under no obligation to interview defendant. Moreover, she formed her opinion regarding defendant's mental status after reviewing treatment notes and medical records prepared by defendant's treatment providers, as well as reports about defendant's mental health prepared by other experts. Such reliance was entirely permissible. (Ibid.)

People v. Townsend, 2013 WL 2948118 *2.

The undersigned finds that petitioner has failed to allege, *and present*, sufficient facts such that it might be determined that there is a real possibility of constitutional error in his 2011/2012 MDO proceeding.

*Conclusion*

An MDO proceeding is a particularly important one in that successive commitments can lead to indefinite detention in a state facility. However, the state procedures in petitioner's 2011-2012 case have not been put at issue in a cognizable way.

/////

7

Accordingly, IT IS HEREBY ORDERED:

1. Audrey King is substituted for the previous respondent, Atascadero State Hospital;

2. The Clerk shall assign a district judge to this case as both sides have not consented to the undersigned presiding pursuant to 28 U.S.C. section 636(c).

IT IS HEREBY RECOMMENDED that the petition be dismissed in part and summarily denied in part. Judgment should be entered for respondent. The undersigned finds that no Certificate of Appealability should issue in this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 27, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE